Good morning, Your Honors, and may it please the Court. I'm Paul Nzinna. I'm here on behalf of the Appellant Gerald Johnson, with me in consultation with Michael The Sixth Amendment guarantees every defendant, however heinous the crime with which he is charged and however compelling the evidence against him, the right to an impartial jury, an impartial jury being defined as a jury in which every single member bases their decision in the case solely and completely on the evidence adduced at trial and free of any external influence. This Court, in its Doctrine case, wrote that that right, that no right goes more directly to the heart of fairness in a trial. In order to secure that right, the Supreme Court has mandated a process. In Remmer v. United States, the Court held that, the Court reiterated, reaffirmed its holdings from the Maddox case in the 19th century, that any material external communication contact or tampering with a jury is presumptively prejudicial, and the government bears the burden, which the Court characterized as a heavy burden, to overcome that presumption. The Court also, in the Remmer case, established what this Court recognized in Barnes v. Joiner as a, quote, separate but related requirement, and that separate but related requirement is a hearing. The defendant is entitled, in certain circumstances, to a hearing in which the defendant is allowed to participate and has an opportunity to ferret out partiality on the part of the jury and to create a record whereby this Court can determine whether his right to impartial jury was protected. In the Barnes case, this Court held that that right is protected not only by the Sixth Amendment, but also by the Due Process Clause. Now, if we agree with you that the District Court abused its discretion here, would we remand for a Remmer hearing, or are you entitled to a new trial? Are those options equally available to us? I believe that the appropriate remedy in this case would be a new trial, because this trial ended. Why not a Remmer hearing? Well, partly because this trial ended more than a year and a half ago, and I think it would be very difficult to bring the jury back in. We don't know that, do we? I'm not saying it would be difficult to locate the jurors and bring them in, but even assuming that they were located and brought in, I think it would be very difficult to be confident that a voir dire of them, at this point in time, more than a year and a half after they What is your core objection here as to what went wrong, that nothing's on the record here? That third parties conducted the investigation rather than the District Court? That is, the court staff? Tell us the essence of what went wrong here. The essence of what went wrong here is that, plain and simply, there was a credible allegation of an external contact with the jury that was not innocuous. I'm sorry, I can hardly hear you. Your words drop off. I'm sorry. A credible explanation that? There's a credible allegation that there was an external contact with the jury that was not innocuous. That was not what? Not innocuous. Now, the government filed a 28-J letter the other day, citing a case that this court decided last week. Now, the court did take action each time. And if you're talking about the alleged photographing, the court took action. What was wrong with the action the court took? What was wrong with that action is that, under Remmer, that what the court was required to do was to hold a hearing with the participation of the defendant and the defendant's counsel. So you're saying the failure of the court to conduct the hearing rather than to have staff members interview the jurors is the core complaint that you have here? Yes. In fact, I think, I mean, in Remmer, the court. I'm sorry. Is your answer to that question, yes, that is your core problem? I'm sorry, yes. I said yes. Oh, thank you. I apologize. I've been a little sick. My voice is a little low. Oh, I'm sorry. That is the core objection. In fact, in Remmer, the court here said, when this happened, the court said, we do not have enough information before us to determine what happened here. We need to get more information. And this court, in Barnes v. Joyner, held very clearly that when there is a reasonable suspicion that more information is needed, the Remmer presumption and the Remmer entitlement to a hearing is triggered. In Remmer, the court itself, the Supreme Court itself said that the district court should not conduct an ex-party investigation, that that investigation should be one before the defendant and in which the defendant has the opportunity to participate. In fact, what the court did here comes close to what the court found to be problematic in Remmer. In Remmer, remember, the FBI went and contacted the jurors. Here what happened was court staff went and spoke with the jurors, a highly unusual event, particularly in the context of this case, given what had happened up to this point. And I think that that was a clear error under Remmer. You know, we have two other cases this year, I believe, don't we, from the same district judge? Yes, I think that's right. And in each case, the judge, each of those cases, the judge did pose questions directly to the jurors. That is correct. Did he not? Yes. Any explanation for why that did not occur in this case? I don't have one. And frankly, it's a little extraordinary because... I just want to be sure I understand. If the district judge had posed exactly the same questions, you would have no Remmer claim? Is that what you're saying? If the district judge had conducted voir dire and posed those same questions to each of the jurors, we would not have a Remmer claim. No, because I don't read those cases as posing them to each of the jurors. I think that the procedure was very similar to the procedure here. To pick one personality, found out about the... But it's... Let's just assume, for purposes of my question here, that I've remembered the facts correctly. But I understand. I'll get the real facts. Well, I think in those cases, I think particularly in Small, the district judge queried the juror who raised the issue about whether that juror had spoken with other jurors. Right, but I thought you said he had to talk to all the jurors. Just 30 seconds ago, I thought you said that to me. Yes. And I do believe that's true because it's clear in this case, at least from what we can tell, that this juror told all the rest of the jurors that this photographing incident had happened. So all the jurors were aware of it. But I thought you were telling me that in those earlier cases, that the judge talked to all the jurors. Is that your submission? No, it's not. Okay. The judge, I think in those cases, talked to all the jurors that the judge had reason to believe were aware of the external contact. Right. And if he had members of his staff talk to all the jurors in this case that he had reason to believe were a problem, that would be wrong because it has to be the district judge. And that's the sole basis for your Remmer claim? No, that's not the sole basis. Okay. I thought that was, I thought I'd just say that's your core objection to the Remmer claim. I thought you just said that to me. But what you said was because it has to be the district judge. That's what I asked you in the question before. Yes. And the objection is not simply because it was not the district judge. The objection is that the examination of the jurors was not conducted with the participation of the defendant as Remmer requires. Okay. So you would have to say that those earlier cases were conducted with the participation that you think is necessary, right? Yes, I think that's right. Okay. And if they weren't, then they wouldn't be, then you would be confining to just whether it's the district judge or not. Well I think that would be an error under Remmer because Remmer makes very clear. And Smith v. Phillips makes very clear. But we've already held in those cases that there was no error, right? I believe that's correct, yes. Are any of the staff's questions in this case directed to whether the jurors could remain impartial? No. As far as we know, we do not have a record of exactly what the staff asked the jurors. There is no written record of that. The judge instructed the staff, his clerk, to take notes very generally about what was asked. So we don't know. But as far as we can tell, the judge told his staff to ask them simply whether they were aware of anything. And he told them not to ask anything further, so we need to assume that they were not asked anything about partiality. I'm wondering, counsel, as a practical matter, what do you do? And I understand your point, and I think it's well taken. But in a case like this, how could the jurors not be intimidated by the facts of the case, by the fact that the cooperator with law enforcement was murdered? I mean, factually, it's a very challenging case. It certainly is. What happens if it goes back for a retrial? Do you ask for an anonymous jury? I mean, the likelihood of jurors being spooked is pretty high, isn't it? Well, what happened here, the three things that the jurors pointed to that caused them concern. The jurors, this is not a case like in the U.S. v. King case, where the government cites, where the jury gave their verdict and said, we're concerned about our safety. And the court there said, they're concerned because these guys were gang members and violent people. There's no external conflict they're relating to, external contact. But here, the jury complained about three things. One, they said that the defendants were passing notes and looking at them. But that wasn't extrinsic information. Okay. I mean, those aren't the first three really more properly characterized as intrinsic to the trial. Your Honor. And the real issue is the alleged perception of the photographs. Yes, the real issue, because this is a ratcheting up. It's an accretion of concerns by the jury. Well, how are the first three incidents external influences? Well, they're external because they encourage the jury to decide the case based on a factor external to the evidence. The jury in this case said, look, we're concerned that these people may know where we live and may take retaliation against us. And they did this immediately after questioning the concern, the killing of a cooperator and the police's inability to stop the killing. So any time a defendant acts up in court, it's external? It's all a defendant has to do is act up and you get the new trial? I'm certainly not advocating that, Your Honor. For example, one of the cases... That can't be, it seems to me. No. One of the cases was where the defendant gave an obscene gesture while he was testifying. That's obviously internal. But the point here is that this jury complained about... The things that the jury complained about are things that are relatively easily fixed. The note passing and the looking, I mean, there's nothing you can do about defendants looking at jurors. I mean, that's just part of the... There's nothing you can do about that. As far as voir dire, the court can take more concerted steps to assure the jury that their The court can also take steps to prevent the jury from being exposed to people in the hallway, like the court did in Small. And if nothing else works, it may be that an anonymous jury is required. I mean, the point is, the judge in this case asked, where does it end? This is reasonable for a jury to be concerned about this stuff. And it ends when the defendant has an impartial jury. The Constitution doesn't say you're entitled to an impartial jury or the best we can do. It says you're entitled to an impartial jury. And it doesn't change depending on how heinous the crime is. Now, under the issue in this case, the crux of this case comes down to this. The district court held that no Remmer hearing was necessary because the defendants had failed to meet their threshold burden. And if Remmer doesn't apply, you can't prevail here, right? That's correct. The threshold burden that the judge is referring to, obviously this is not an innocuous intervention. If a defendant's mother and defense witnesses are photographing jurors who had previously complained about their concerns, that's certainly not innocuous. So the question boils down to, was there a credible allegation of an external contact? And the judge in this case found juror number four's allegation credible. He specifically held, as a matter of fact, juror number four saw something that caused him to believe that he was, or likely was, being photographed. The judge also found it credible enough to say- And he excused juror number four. He did excuse juror number four, yes. The judge also found the allegation credible enough to say that we don't have enough information. We have to find out more from the jury. And this court has made clear that when that's the case, a Remmer hearing is required. It's not up to the court to go to send his staff in. It's a Remmer hearing with the defendant's participation. I'm sorry, what triggers it being a Bremer hearing? A credible allegation of an external contact that is more than innocuous. Well, I thought that the judge was taking the position he didn't know whether it was credible or not. And that's why he was having this informal investigation. Well- So, I mean, I take your point, but if that was the case, he could do this. I guess it all depends. I mean, what do you rely on to say that this triggered Remmer? I rely on the fact that A, the judge found that the juror number four saw something that made him believe there was photographing. Now, the district judge, frankly, answered the wrong question here. The district judge looked at was any photography actually done here? And frankly, that's really not the question here. I mean, if the defendant's mother had held her camera up and pretended to take a picture, that would be as injurious as taking an actual picture. So you're saying it's what the jury takes from it, not what was actually done. That is exactly the point. Perception versus- Yes. And the district judge found- Perhaps reality. Yes, and the district judge found, as a matter of fact, that something happened here to make juror number four believe this was true. And then juror number four told the other jurors that this was the case. And none of those jurors was asked, do you believe juror number four? They were asked, did you see anything? But the fact that they didn't see the photography happening, or whatever it was that happened, the fact that they didn't see it doesn't mean they didn't believe it happened. We don't know if they believe it happened. We don't know if they believe it happened and felt that they could be impartial after that. All we know is that juror number four, who raised the issue, was excused. And the judge had previously basically told the jurors, look, stop asking me these questions. So, frankly, we come away from this case with no confidence at all that our defendants had an impartial jury. So where is the judge's finding? The judge's finding is at- I know I'm circling around it, but- Yes. I think I'm in the right area, but I'm not sure. 307 F SUP 3rd, page 431. Not at the, you don't have a transcript reference. A transcript reference, I believe I do. I mean, it was always the foot. Yes, sorry, Joint Appendix. Yeah, do you have a Joint Appendix site, I think is what- Yes, I- Maybe you have one. Your Honor, I see my time is up. I'd be happy to find that while the government's arguing. Well, aren't we interested in what the judge ruled at the time of the hearing? I mean, I thought that that's what you just said to us. He made a finding. Yes. And so, were it JA 1215, 1216, 1217, somewhere in there is there's this finding? Maybe you can find this, you and your colleague can work on this. Sorry. Joint Appendix, page 1228. 1228. Midway down the page. You're saying 1228? 1228. Begins at line 11. Yep, it- I would say that that's a finding that the juror thought he saw something, but he didn't. I can't find any corroboration for juror force concerns or observations in the statements of any other jurors, any court security officers, or any other information that's been brought to the court's attention. So the court didn't really make a finding that it was credible. It seems to me that your point is more the court didn't inquire into partiality or address the issue of impartiality rather than saying whether the juror was credible to begin with. I mean, isn't that where your argument's going? The problem is that those two are linked because the inquiry into partiality is triggered by a credible allegation. Right, but the court doesn't say it was credible. Are you saying implicitly it did by putting in motion a staff inquiry? Yes. That the court wouldn't have done it if it had found it was incredible? Yes. Okay. Certainly. Okay. You have a little bit of rebuttal left. We'll hear from the government. Okay, thank you. Good morning, your honors, and may it please the court. I'm Peter Martinez, and with my co-counsel, Christina Hoffman, I'm here on behalf of the United States. The district judge in this case took a careful, measured, and proportionate approach to evaluating and responding to the jury's concerns. What about the fact that nothing's on the record here? He delegated his remord duties to a third party. Well, your honor, what we do have on the record are the juror's responses, and I would submit that if the court examines pages 1200 through 1238 of the joint appendix, what it will find is, well, first, when this allegation, the photographing allegation- But defendants were never allowed to question. That's correct, your honor. And the defendants, I would submit, your honor asked questions about the Smith and Small cases that were also in front of Judge Bradar. The defendants did not question the jurors in those cases either. In Smith, Judge Bradar did conduct brief individual voir dire of the jurors, but he asked all of them two questions. Defense counsel did not ask questions. But in those cases, you didn't have the sequence of events like you did in this case, where the jurors are concerned about information, about note-taking, about conference among themselves. This was, as counsel's saying, an escalating situation, unlike Small or Smith. I would respectfully disagree with that characterization, your honor. I think that there can be no cumulative effect, there can be no aggregating of concerns here, because the first two concerns relate to the defendant's conduct in court and standard procedures for impaneling a jury. Those aren't putting any weight on the scale. So by the time the photographing allegation comes up, there's nothing on the scale already. Let me tell you what bothers me about this case, and I'll also say that, I mean, this is a case where I walked in the door where I just don't know the answer. I mean, I think it's really hard. What do you do in a situation where the record says nothing about whether the jurors can remain impartial? The juror number four said, hey, guys, this is serious, or words to that effect, they're taking pictures of us. And nobody, not the staff, not the judge, nobody inquires to the jurors whether that has any impact on their ability to be impartial in a case where a government cooperator was murdered. That's what's really troubling me in this case. I understand the court's question. I would say on this record, based on the way Judge Berdar conducted this investigation, he didn't need to inquire of the jurors whether they could be fair and impartial, and here's why. He, after the, I like to begin from the moment the allegation first was reported to the court. The initial allegation was reported to Judge Berdar by me, a prosecutor, who heard it from a court security officer, who in turn heard it from a juror, who heard it from another juror. It was a fourth-hand report, and that report was vague. It was essentially that an unknown person or persons had attempted to photograph one or more jurors as they were departing the jury room and going to a public hallway during an afternoon recess. But didn't the judge necessarily find it credible, as opposing counsel is suggesting, by commissioning the staff to look into it? No, Your Honor. I mean, there might have been merit to it, so Judge Berdar felt like, we better do this. Well, I think the reason Judge Berdar decided to do it, and where I was going, initially Judge Berdar proposed sending a written communication to the court instructing them that the matter was being investigated, period. Appellant's counsel objected to that communication. They moved for a mistrial. Judge Berdar denied the mistrial. When he denied the mistrial, defense counsel then requested a break so that they could conduct a follow-up inquiry with the hope of being able to, quote, rectify the situation by later informing the jury that the matter had been investigated and that no photographs had been taken. That is exactly what happened here. Judge Berdar gave the appellants exactly what they requested. How can you say no photographs were taken when multiple people were accused of taking photographs, but they only checked one phone? Well, I think there is, to be sure, Your Honor, only one phone was examined. But we do know from the record of the jurors' responses that three other jurors, jurors 1, 6, and 11, all reported having seen individuals with cell phones in the hallway. And none of them believed that the jurors were taking photographs. All of those jurors saw the same thing as juror number 4, but they drew the opposite inference. I thought there was a report of multiple people taking pictures or appearing to be taking pictures. I think that came from juror number 4. And when his response was actually put into the record by the law clerk who took notes of the interview, it simply reflected that two jurors, or two spectators rather, had their cell phones out with the cameras facing out. OK. So two people taking pictures and you checked one phone. Two people holding cell phones in a way that caused a single juror to believe, mistakenly as it turned out, that they may have been taking photographs. All right. Well, in the Hines case, which you were notified of, the finding was made in that case that the jurors were told no photograph was taken, and yet this court still said a rumor hearing was required. So how do you distinguish Hines from your situation? Your Honor, I would submit that Hines is neither binding nor persuasive nor helpful to these appellants, and that's true for the following reasons. First, there is a single paragraph addressing the rumor allegation at the end of the opinion in Hines. And to be sure, there is a sentence in that paragraph that says something to the effect of, the appellants were entitled to a hearing which they received on the potential prejudicial impact of the picture-taking episode in that case. But a hearing had been held before the district court in Hines. The issue before the court, before this court, was whether the district court properly credited the testimony by the affected juror in that case. And so the sentence in Hines that says the appellants were entitled to a hearing is dicta. And we know that it's dicta because if it weren't, this court's opinions in Barahona in 2014, and indeed in Small last week, wouldn't have come out the way they did. So are you saying that what the district court did in this case was effectively determine that there was no prejudicial effect on the jury? Well, he determined that there hadn't been a credible allegation of an external contact that was more than innocuous. What is the factual basis for saying it's not credible? The factual basis was the juror's statements to the courtroom deputy clerk and the law clerk. That was untruthful? That he didn't find, well, there were two, I think the judge's credibility finding is supported by two things. First, at page 1228 of the joint appendix, he makes clear that he didn't find anything in the responses of the jurors or the report he received from the court security officer corroborating the notion that spectators were taking photographs. Okay, but it's the perception of the jurors, isn't it? Whether there's a problem, their ability to remain impartial. And why wouldn't the judge then, with the participation of the defendant, ask them whether this affected their ability to remain impartial? Why didn't he have the duty to do that under Hines? I believe the reality matters, and once the judge made a finding that he doesn't believe there was a credible allegation of an external contact that was more than innocuous, at that point he has to weigh the risk of wardeering the jury and injecting prejudice. Well, if the judge finds the juror number four is not credible, what is the basis for excusing juror number four? He did that in an abundance of caution, Your Honor, because juror number four may have subjectively believed that he had been photographed. I think that he was doing it as a prophylactic measure. I would say that the judge didn't stop there, and to Judge Keenan's point about ensuring that the jury could remain fair and impartial, what the judge did here, following the dismissal of juror number four, following his credibility finding that no actual photographing had taken place, before any additional evidence was presented to the jury, Judge Berdar was notified that the Marshal Service and an assistant U.S. attorney with no involvement in this case had investigated the matter, interviewed a relevant individual, examined her smartphone, found no evidence of photographs, and then at the request of the defendants, Judge Berdar informed the jury of that investigation's findings. That reduced the likelihood of prejudice, and, Judge Keenan, it corrected any misimpressions that jurors may have received from juror number four. It was informing them that as best the investigation could determine, there was no evidence that there was no evidence of actual tampering. But in Hines, they made that point. The judge told the jury, no photograph was taken, and yet they still held they were entitled to the hearing. In Hines, Your Honor, the affected juror reported the alleged photographing during the middle of the trial. He was told essentially by the trial judge, don't worry about it, he was allowed to remain on the jury through the guilty verdicts, and only then was a hearing held. The judge, and this goes to whether defense counsel could participate, only the judge asked questions of the affected juror. He said, it didn't really affect my deliberations, and this court credited or affirmed the district judge's crediting of that testimony. The way this case is different than Hines is there was no need for a similar post-verdict hearing, because by the time the verdicts were returned, Judge Berdar had already dismissed the only person who claimed to have seen spectators taking photographs. The procedure in Hines simply wasn't necessary. Okay, but you have here a situation where a threat to take a photograph could be just as invasive of juror impartiality as actual taking of a photograph. And so the court, again, it comes down to the perception, doesn't it? I mean, if the juror saw somebody, it doesn't matter whether a photograph was actually taken or not. I mean, you're arguing like that closes the case, but it seems to me that the further issue is, was there intimidation by virtue of the fact the juror foresaw what appeared to that juror to be photographing. You can intimidate somebody and affect their impartiality just as much as you can by taking an actual photo. Your Honor, I think a good place to start in responding to that question is to point to Judge Wilkinson's opinion last week in Small. And in that opinion, he noted that we tolerate certain instances of extrajudicial contact that are so innocuous that they couldn't possibly justify a presumption of prejudice. And what I would say to Your Honor is that if we're at the point where during eight weeks into a 10-week trial, if a juror encounters a spectator in a hallway who's holding their cell phone out in a way that causes him to believe a photograph may be taken. If that's enough to trigger a remmer hearing on its own, then we're a victim. But we have here more. We have here more, and that is this juror allegedly communicating to the panel, guys, this is serious. Somebody out there is taking pictures of us, or words to that effect. So what the judge did was he investigated, he collected enough information from each and every juror about what they'd seen and heard. He did it in a way that was least likely to unsettle the jury. That was the point of having the courtroom deputy clerk conduct the questioning. She was the one who had contact with the jury every day. She was the one, she was their primary point of contact with the court. After collecting that information, he made a credibility finding that there was not credible evidence before him of an external contact that was more than innocuous. And then he provided a curative instruction at defense counsel's request. I think that that, in doing the inquiry that way and issuing that instruction, he wisely walked the line between looking under the hood and attempting to detect bias or impartiality, but not unsettling the jurors by asking questions and creating bias where it didn't exist. Okay, so the takeaway from our opinion, supporting your position, would be that it is okay for the judge to outsource the responsibilities of a Remmer hearing to court staff and then delay a decision on whether to bring the defendant into it. Wouldn't that be the takeaway? The court can outsource the duty to inquire as to jury impartiality? Your Honor, I would submit that what happened here wasn't a Remmer hearing. The judge was determined... Well, no, but to outsource questioning. The judge can outsource that. Have we ever said that, that the court can outsource the inquiry? No, Your Honor, but we did cite cases at pages 44 and 45 of our brief that stand for the proposition that a district judge has latitude, has discretion to fix the exact procedures of any inquiry into alleged third-party contact with a juror. And in doing that, he has to balance, on the one hand, the need to better ascertain what happened with, on the other, unduly magnifying the importance of an insignificant event, which is what we had here. And the way Judge Berdarch struck that balance was he accommodated what defense counsel asked for. He looked further into the matter to figure out whether photographs were taken. But he did it in a way that was least likely to unsettle the jury. He didn't bring them into the courtroom for questioning. He didn't subject them to cross-examination. When defense counsel... Initially, he proposed to have them questioned as a group, but when defense counsel said, no, we don't want to do that for fear of poisoning everybody, he said, okay, I'll accept your suggestion. We'll have her do it individually. The point here is that this was a collaborative process done with the input of defense counsel. And under the circumstances here, I do submit that it was a wise way of walking the balance between figuring out what happened and not unsettling the jury. Well, the defense for sure objected to all of this. But did they make a contention to the district court, even if you're going to follow this procedure that we don't agree with? You have to do the questioning. No. I don't believe that ever appears anywhere on the record, Your Honor. We object to this person. Let me ask you a question. If, very hypothetically, we were to disagree with your position, is a Remmer hearing the remedy or does he get a new trial? Well, Your Honor, I shouldn't get to that point. But in that event, I think the relief would be a Remmer hearing. In this court's opinion in cheek, I believe the Remmer hearing was held years after the fact. So I don't see any reason why it couldn't be done in this case. I don't think counsel was able to provide the court with any. I do not think the remedy would be a new trial. I do want to come back to some of this court's cases addressing photographing. And the one I want to start with is Barahona, which was 2014. In that case, the allegation was that during the middle of a three-week trial, the defendant himself had followed a juror down an escalator in a courthouse and photographed her. And what happened there was the defense attorney examined his client's phone, said, Your Honor, there's no photographs on the phone. And the judge said, fine, OK, and the trial went on. There was no hearing. There was no voir dire. And on appeal, in an opinion by Judge Davis, he concluded that that kind of allegation isn't the kind of external contact that could reasonably draw into question the integrity of a jury's verdict. And if that's true where the defendant is alleged to have taken photographs of a juror, it's certainly true in this situation as well. Small, last week, involved similar facts. There, two jurors reported that as they were passing from Judge Berdar's courtroom, the very same courtroom where this trial was held, they saw two individuals who they believed were watching them and that one of them may have been taking photographs and videos. There, Judge Berdar refused to dismiss either juror or conduct any voir dire. In this case, Judge Berdar did more than Judge Titus did in Barahona or than Judge Berdar himself did in Small. He did fact-finding. He accepted the suggestion to better figure out what happened. He dismissed the juror who believed he may have been photographed. And so if anything, what happened here was a more careful, more measured, more proportionate response to the jury's concerns than either of the responses this court affirmed in Barahona and Small. And I would also submit that Judge Berdar did more than what happened in Hines. Even though there was a post-verdict Remmer hearing in Hines, here, the appellants got more process in a more timely way and they ultimately had the juror who said he saw the photographs being taken dismissed. And so I would submit that when you combine all three of those cases, what happened here falls farther along the spectrum towards, it raises less concern than was present in any of those three cases. I do want to address just one factual point I wanted to make regarding Judge Berdar's experience in the Smith case, where jurors raised concerns about defendants' personal information about them during voir dire. I think, as I mentioned before, defense counsel did not participate in the questioning there. And I just wanted to correct the record on that. I think we have no further questions. Thank you, Your Honor.  Do you have a rebuttal, sir? Yes. Thank you, Your Honor. I want to start by, one of the last things that counsel for the government talked about was the Barahona case. And he said that the defendants in this case, that Judge Berdar did more in this case than the trial judge did in the Barahona case, as far as questioning the jurors. But in fact, in the Barahona case, the court wrote, defendants requested that the court voir dire the juror. After confirming through Barahona's counsel that he had not followed the juror, the court determined that it, but not the party's attorneys, would conduct the inquiry. So the judge in that case did conduct the voir dire, which is certainly more than Judge Berdar. Government started off by saying that the district court here took a careful, measured approach. And they cited a number of cases talking about the latitude that the district judge has in these cases. The difficulty, though, is if you look at those cases, like the Butler case that they did in 1944, I believe, with the brief, those are cases where this court held, we are not going to micromanage the court's conduct of voir dire in those cases. The court can ask the questions it wants. But those are not cases where the court said, this court said that the district judge has tremendous latitude in deciding whether or not to conduct the voir dire. Those are two very separate questions. Now, the government also said that the other jurors were questioned and none of them believed that anyone was taking pictures. We simply don't know that. None of the jurors was asked that question. The jurors were asked, at best, did you see anyone taking pictures? No one asked, did you believe juror number four's report? And the government argues that the jurors' responses are on the record. They're not on the record. What's on the record is the judge's clerk's description of what was asked and what was answered. And if you look at it, the clerk in one case said that he wasn't sure if one of the jurors was a man or a woman. Can I ask you a little bit about your, because I frankly hadn't realized that this was so core to your argument that it was the judge's employees rather than the judge himself doing this questioning because you surely did want to examine these jurors yourself. But when the judge came up and there was this long discussion about what we're going to do and he's suggesting this, did you say, no, it can't be, you have to be doing the questioning, Your Honor? Well, the point is that we objected. And I gave you all that, my question. You objected to the whole thing. You didn't want it done that way. And the point is not so much that the judge did not conduct. Oh, but see, I thought it was from your argument here. Well, the point, it's all part of one package is that the voir dire that we asked for is voir dire where the judge asks the questions and we are there. Right, I understand that. And in those other cases, even where the defense lawyers didn't ask questions, they were there. But I thought that, as you said, was part and parcel of one argument. And I thought also a part of that argument was that the employees were doing this and not the judge. Also, the judge said, this is the first step in our investigation. This is going to identify a smaller group who will need additional questioning. And that didn't happen. I understand that. But it is, I'm not misunderstanding you that you draw significance from the fact that the judge's employees rather than the judge ask these questions. I do, yes. You do draw significance from that. Yes, particularly since it was outside of the presence of the defense and center counsel. Yes, but if we posit the same questions asked by the judge outside the presence of defense attorneys, would there still be error? Yes, certainly. Okay. Thank you, Your Honor. Thank you. We appreciate your arguments, and we will come down, we'll ask our clerk to adjourn court, and then we'll come down and greet the lawyers. Come down and greet the lawyers. Come down and greet the lawyers. Come down and greet the lawyers. Come down and greet the lawyers.
judges: Diana Gribbon Motz, Barbara Milano Keenan, William B. Traxler Jr.